IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |  |
|---|---|---|
| **ESTATE OF ANTHONY LEZURRO MILLER,** *by and through his personal representative, Latasha Roshell Mayhew*, | ] ] ] ] | |
| **Plaintiff,** | ] ] | |
| v. | ] ] | 7:23-cv-1201-ACA |
| **UNITED STATES OF AMERICA, et al.,** | ] ] ] ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION AND ORDER

On a rainy morning in February 2021, Defendant Ernestine Butler was driving to work in a minivan paid for by a transit subsidy program provided by her employer, the Federal Bureau of Prisons, when she was involved in a car accident that killed Anthony Lezurro Miller. Plaintiff Latasha Roshell Mayhew, as personal representative of Mr. Miller's estate, sues Ms. Butler in her individual and official capacities. (Doc. 1 ¶ 13). Ms. Mayhew also sues the United States, the Federal Bureau of Prisons, the United States Department of Justice, and the National Institute of Corrections, for negligence, negligence per se, wantonness, wrongful death, and negligent or wanton hiring, supervision, or entrustment. (*Id.* ¶¶ 9–12, 21–62). Finally, Ms. Mayhew brings her claims against the governmental entities under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (*see* doc. 1 ¶ 1), which "waived the

sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment," *Brownback v. King*, 592 U.S. 209, 212 (2021) (quotation marks omitted). The United States, which the court will call "the government," moves to dismiss all claims against the governmental entities under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56(a). (Doc. 13). In response, Ms. Mayhew moves, under Rule 56(d), for the court to defer ruling until the parties have completed discovery. (Doc. 15). Because the government challenged this court's subject matter jurisdiction, the court stayed all parties' obligations under Federal Rules of Civil Procedure 16 and 26. (Doc. 29).

The court **FINDS AS MOOT** the government's Rule 56(a) motion for summary judgment because a motion for summary judgment attacks the merits of the case and is not an appropriate way to challenge subject matter jurisdiction. Turning to the Rule 12(b)(1) motion, the government first seeks dismissal of the Federal Bureau of Prisons, the Department of Justice, and the National Institute of Corrections on the ground that they are not subject to suit under the Federal Tort Claims Act. (Doc. 13 at 18–19). Ms. Mayhew concedes that dismissal of those defendants is proper. (Doc. 15 at 1). Accordingly, the court **GRANTS** the government's Rule 12(b)(1) motion to dismiss those defendants and **WILL DISMISS** the Federal Bureau of Prisons, the Department of Justice, and the National

Institute of Corrections **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Second, the government seeks dismissal of itself on the ground that sovereign immunity deprives the court of subject matter jurisdiction over the claims against it because Ms. Butler was not acting within the scope of her employment when the accident occurred. (Doc. 13 at 9–18). Because the government's jurisdictional attack also implicates the merits of Ms. Mayhew's claim and she has not had an opportunity to conduct any discovery about whether Ms. Butler was acting in the line and scope of her employment, the court **GRANTS** Ms. Mayhew's Rule 56(d) motion and **DENIES** the government's Rule 12(b)(1) motion **WITHOUT PREJUDICE** to renewal after discovery is complete. The court **LIFTS** the stay it had imposed on Rule 16 and 26 obligations and **WILL ENTER** a separate order with instructions for the parties to confer and file a Rule 26 report.

### I. STANDARD OF REVIEW

Before setting out the facts, the court must address the standard it will use to evaluate those facts. The government's motion in this case purports to be both a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(1), and alternatively a motion for summary judgment, under Federal Rule of Civil Procedure 56(a). (Doc. 13 at 1).

A defendant challenging the court's subject matter jurisdiction over a case may seek dismissal "by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Regl Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A facial attack accepts as true the facts alleged in the complaint, requiring the court to determine only whether those facts sufficiently allege a basis for subject matter jurisdiction. *Id.* at 1232–33. "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233. In this case, the government makes a factual attack. (*See* doc. 13 at 12–13) (inviting the court to consider extrinsic evidence in making the jurisdictional determination).

When a defendant makes a factual attack on the court's jurisdiction, the court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quotation marks omitted). But the court's authority to make factual findings based on disputed facts dissipates when the movant's attack on jurisdiction "also implicates an element of the cause of action." *Id.* (quotation marks omitted). In that situation, "the attack on jurisdiction is also an indirect attack on the merits." *Id.* at 1530. In other words, "[i]f a jurisdictional challenge does implicate the merits of the underlying claim then[ t]he proper course

4

of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (cleaned up). In that situation, "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Lawrence*, 919 F.2d at 1530 (quotation marks omitted).

Rule 12(b)(1) and (h)(3) require a court to dismiss an action if subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1) (permitting a party to move for dismissal based on lack of subject matter jurisdiction); Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss an action "at any time" if it determines that it lacks subject matter jurisdiction). By contrast, Rule 56 permits the court to enter judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But a court that lacks subject matter jurisdiction "is without power to enter judgment." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021). Accordingly, a court faced with a "valid factual attack . . . must construe a motion for summary judgment as a factual attack on subject matter jurisdiction under Rule 12(b)(1)." *Id.* (alterations accepted; quotation marks omitted). Here, the government has moved under both Rule 12(b)(1) and Rule 56(a). (Doc. 13). Accordingly, there is nothing for the court to construe. The court therefore **FINDS AS MOOT** the government's Rule 56(a)

5

motion for summary judgment. Next, the court turns to the evidence the government presents in support of its Rule 12(b)(1) motion.

## II.   EVIDENCE

Ms. Butler is a Bureau of Prisons employee employed at Federal Corrections Institute Aliceville as a recreation specialist, a job that requires her to have "general knowledge of the goals, principles, methods, and techniques of the broad field of recreation." (Doc. 13-1 ¶¶ 3–4). She was a participant in a voluntary transit subsidy program called the Bureau Employee Transit Subsidy ("BETS"), "which is an employer provided benefit designed to encourage employees to use mass transit for their home-to-work-to-home commute." (Doc. 13-7 ¶ 3). As relevant to this case, the BETS program provides employees "transit fare media" equal to their personal commuting costs, up to a maximum amount per month. (*Id.*) (quotation marks omitted). The BETS program also pays for privately owned companies to provide vehicles for van pools. (*Id.*). On the day of the accident, Ms. Butler was using one of those vehicles. (Doc. 13-7 ¶ 4).

According to the traffic crash report, the accident occurred at 10:10 a.m. on a road that had one lane for each direction of traffic. (Doc. 13-4 at 20–21). Another driver on the road that morning, Combyuatta Bryant, attests that she was driving at the speed limit in an area where passing was not safe when "an Aliceville prison van

6

passed [her] at a high rate of speed." (Doc. 15-1). Seconds later, she saw that the van had been involved in "a terrible accident." (*Id.*).

Ms. Butler told the police officer who responded to the scene that she was on her way to work when the accident happened. (Doc. 13-4 at 22). The traffic crash report states that Ms. Butler was driving in the correct lane when Mr. Miller crossed the center line and struck her van head-on. (*Id.* at 20–22). The report does not, however, explain how the officer who filled out the report got the information that Mr. Miller was the person driving on the wrong side of the road. (*See generally id.*). Mr. Miller was pronounced dead at the scene. (*Id.* at 22).

### III.  DISCUSSION

Ms. Mayhew brings a number of state law tort claims against the government. (Doc. 1 at ¶¶ 21–62). Normally sovereign immunity bars lawsuits against the government. *Smith v. United States*, 14 F.4th 1228, 1230–31 (11th Cir. 2021). But the Federal Tort Claims Act waives sovereign immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," so long as the government, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Federal Tort Claims Act does not waive sovereign immunity "[f]or claims concerning federal employee conduct that

was outside the scope of employment." *Smith*, 14 F.4th at 1232. The burden of showing that the federal employee was acting within the line and scope of employment rests on the plaintiff. *Hubsch v. United States*, 174 F. 2d 7, 9 (5th Cir. 1949).

The government contends that Ms. Mayhew cannot carry this burden because Ms. Butler was acting outside the scope of her employment when the accident occurred.[1] (Doc. 13 at 9–18). Specifically, according to the government, Ms. Butler's commute to work was not within the scope of her employment because it was not one of the duties she was hired to perform and it did not confer a benefit on her employer. (*Id.* at 11–13).

In the context of the Federal Tort Claims Act, whether an employee was acting in the line and scope of her employment is both a jurisdictional and a merits question. *Lawrence*, 919 F.2d at 1529 (explaining, in an Federal Tort Claims Act case, that "[t]he existence of plaintiff's cause of action depends on whether [the federal employee] was acting within the course and scope of his employment. The pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary

---

[1] The government also makes a passing argument, confined to a footnote, that it is entitled to sovereign immunity because the evidence shows that Mr. Miller, not Ms. Butler, caused the accident. (Doc. 13 at 10 n.3). The evidence about who caused the accident is disputed: the traffic report states that Mr. Miller crossed the center line but a witness attests that Ms. Butler was speeding and passed her car in an unsafe manner moments before the accident. (*See, e.g.*, doc. 13-4 at 20–22; doc. 15-1). The court therefore will not find a lack of subject matter jurisdiction based on this argument. *See Lawrence*, 919 F.2d at 1529.

element of the tort claim"). Accordingly, the only way this court can dismiss the action against the government for lack of subject matter jurisdiction is if the evidence about Ms. Butler acting outside the scope of her employment is undisputed. *See id.*

The court uses the law of the State where the tort occurred (here, Alabama) to determine whether the tortfeasor was acting within the scope of her employment. *Bettis v. United States*, 635 F.2d 1144, 1147 (5th Cir. Unit B, Jan. 27, 1981).[2] Under Alabama law, "[a]n act is within an employee's scope of employment if the act is done as part of the duties the employee was hired to perform or if the act confers a benefit on his employer." *Cobbs, Allen & Hall, Inc. v. EPIC Holdings, Inc.*, 335 So. 3d 1115, 1139 (Ala. 2021) (quotation marks and emphasis omitted). Typically, "[a]ccidents that occur while an individual is travelling to and from work are not considered to have arisen out of and in the course of employment." *Shaw v. C.B. & E., Inc.*, 630 So. 2d 401, 404 (Ala. 1993). This is true even when the employee is commuting in a vehicle owned by the employer. *Hays v. Deaton Truck Line, Inc.*, 87 So. 2d 825, 827–28 (1956) ("[A]n employee using an automobile, whether belonging to his master or to himself, in going to and from his place of work is not at such times regarded as engaged in work for his master but is acting solely for his own purposes.").

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

The government has presented hearsay evidence that Ms. Butler was commuting to work when the accident occurred. (Doc. 13-4 at 22). Ms. Mayhew has presented no evidence to the contrary (*see generally* docs. 15, 15-1, 15-2), but contends that, under Rule 56(d), she should be permitted to conduct discovery into whether Ms. Butler's job required her to travel or whether she "was engaged in some duty to the United States in the furtherance of her duties" (doc. 15 at 8 ¶¶ i–j).

Although the court has explained that Rule 56 is not the appropriate vehicle to challenge the court's subject matter jurisdiction, Eleventh Circuit caselaw holds that a plaintiff facing a factual jurisdictional challenge under Rule 12(b)(1) receives "the full panoply of protections afforded" by the summary judgment procedure and that, when a jurisdictional question is intertwined with a merits question, "less in the way of jurisdictional proof" is required. *Lawrence*, 919 F.2d at 1530 (quotation marks omitted). The summary judgment procedure provides that if a party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion, the court may, among other things, defer considering the motion, give the party time to take discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)–(3). A party seeking relief under Rule 56(d) "must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the

absence of a genuine issue of fact." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1287 (11th Cir. 2019) (quotation marks omitted).

The court finds that Ms. Mayhew has satisfied her burden. Although the government has presented evidence about Ms. Mayhew's general job duties and hearsay evidence about what she told a police officer about why she was driving the minivan, Ms. Mayhew has presented evidence that the minivan was labeled as an "Aliceville prison van" (doc. 15-1 at 1), and has asserted that Ms. Butler filed a verified complaint for workers compensation in which she stated that she was acting in the line and scope of her employment at the time of the accident (doc. 15 at 7). Although no party has provided Ms. Butler's workers compensation complaint to the court, the parties appear to agree that she did file such a complaint. (*See id.*; doc. 19 at 10). Accordingly, discovery into whether Ms. Butler was acting in the line and scope of her employment may enable Ms. Mayhew to rebut the government's evidence that Ms. Butler was acting outside the scope of her employment. *See City of Miami Gardens*, 931 F.3d at 1287.

The government argues that discovery is not necessary because (1) Ms. Butler's opinion about whether she was acting in the line and scope of her employment is irrelevant; (2) the government "understands that the Department of Labor concluded that Ms. Butler was *not* [acting] in the course and scope of her employment at the time of the crash"; and (3) the standard for whether an employee

was acting in the line and scope of her employment for workers compensation purposes is different from the standard for tort purposes. (Doc. 19 at 6–7, 9–10) (emphasis in original).

With respect to the relevance of Ms. Butler's opinion about whether she was acting in the line and scope of her employment, the court agrees that her opinion is not dispositive but disagrees that her opinion is irrelevant. The court (and apparently Ms. Mayhew) lacks information about why Ms. Butler believed that she was acting in the line and scope of her employment. Her reasons for claiming she was acting in the line and scope of her employment may affect the analysis about whether she was, in fact, acting in the line and scope of her employment. And the court does not find persuasive the government's assertion that its evidence about Ms. Butler's job duties conclusively establishes that she could not have been operating in the line and scope of her employment. (*See* doc. 19 at 6–7, 12). Under the typical summary judgment procedure, which the court must use here, *see Lawrence*, 919 F.2d at 1530, the court does not accept the evidence of one side without giving the opposing side an opportunity to conduct discovery so that it can attempt to rebut that evidence, *see* Fed. R. Civ. P. 56(d); *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) ("As a general rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery.").

With respect to the government's "understanding" that the Department of Labor has denied Ms. Butler's claim, the government has provided no evidence of that denial. (*See* doc. 19 at 10). The court cannot deny Ms. Mayhew discovery on the ground that the government has represented, without support, that the Department of Labor might have denied Ms. Butler's complaint. Moreover, even if the government had presented a denial decision from the Department of Transportation, the government has not argued that such a decision would be binding—as opposed to persuasive, to be considered in conjunction with any other evidence that the parties might present—on the question whether Ms. Butler was acting in the line and scope of her employment for purposes of lifting the government's sovereign immunity.

Finally, the government has offered no support for its assertion that the standard used for the scope-of-employment analysis is different in workers compensation and tort claims. (*See* doc. 19 at 7; doc. 20 at 10). Instead, it states in a conclusory manner that one of the cases on which Ms. Mayhew relies involved a claim for workers compensation "and, as such, applied a different legal standard." (Doc. 19 at 7; *see also* doc. 20 at 10). It cites no authority holding that the standard is actually different. (*See* doc. 19 at 7; *see also* doc. 20 at 10). Moreover, at other points in the government's own briefing, it cites workers compensation cases for the appropriate standard. (*See* doc. 20 at 5). The court is hesitant to find as a matter of

law, without further briefing, that the Alabama standard used for the scope-of-employment inquiry differs depending on whether the claimant is bringing a workers compensation claim or a tort claim.

But even accepting that the standard for workers compensation claims is different from the standard for tort claims, Alabama law on scope-of-employment for tort claims permits a finding that an employee commuting to or from work was acting in the line and scope of his employment "where a master bears a part of the expense of an automobile used by his servant in going to and from his work and in and about his employment, and such transportation arrangement is beneficial to both." *Atlanta Life Ins. Co. v. Stanley*, 165 So. 2d 731, 735 (1964).

The government initially conceded that Ms. Butler was driving a minivan paid for by the BETS program subsidy, a benefit provided to certain federal employees. (Doc. 13 at 14–15; *see* doc. 19 at 12–13; doc. 13-7 ¶ 3). In its reply brief, it argues that the agency Ms. Butler worked for (the Bureau of Prisons) did not provide her a benefit because the Department of Transportation paid the subsidy. (Doc. 20 at 6, 8). Of course, both the Bureau and the Department are federal agencies and their funding ultimately comes from the same source: the United States. In any event, the Department of Transportation websites of which the government asks the court to take judicial notice do not state that payment comes from the Department of Transportation. (*See generally id.* at 6–8). That information may be buried in the

various links and documents found on those pages, but the government has not pointed the court to any specific language from those pages that support its contention. (*See generally id.*). The court is "not obligated to cull the record . . . in search of facts." *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997). That burden rests on the party presenting the fact for consideration. *See id.* Moreover, even if the Department of Transportation pays the subsidy, the government has provided no authority for the proposition that a different government agency's payment of the subsidy means she does not derive a benefit from her employer. (*Id.*).

The evidence properly presented to the court establishes that the government bore "a part of the expense of [the] automobile used by [Ms. Butler] in going to and from [her] work." *Atlanta Life Ins. Co.*, 165 So. 2d at 735; *see also Shaw*, 630 So. 2d at 404 (stating in dicta that an employee might be acting in the line and scope of his employment if "the driver/worker's transportation expenses constitute a part of the consideration paid for his services"); *Hill v. Decatur Ice & Coal Co.*, 122 So. 338, 339 (Ala. 1929) (stating in dicta that a jury might find an employee's off-duty use of an employer's car to be within the line and scope of his employment if the jury could "infer that such use was a normal one and contemplated as being a part of the compensation for employment"). But that is not the end of the inquiry; *Atlanta Life*

*Insurance* also requires that the "transportation arrangement [be] beneficial to both" the employee and the employer. 165 So. 2d at 735.

The parties have not presented any evidence to the court about whether the BETS subsidy benefits the employer as well as the employee. Ms. Mayhew, however, seeks to conduct discovery into that question. (Doc. 15 at 6–8 & 8 ¶¶ d, f). In light of the lack of evidence that the subsidy does not benefit the Bureau of Prisons (or, for that matter, the United States) and Ms. Mayhew's objection to the court ruling on that issue before discovery can be conducted, the court finds that discovery is appropriate. The court therefore **GRANTS** Ms. Mayhew's Rule 56(d) motion.

Because the government's jurisdictional challenge is intertwined with a merits element of Ms. Mayhew's claim, the court will not defer ruling on the Rule 12(b)(1) motion but instead **DENIES** that motion **WITHOUT PREJUDICE** to the government renewing it after appropriate discovery has been conducted. The court emphasizes that this ruling makes no findings of fact about whether Ms. Butler was acting in the line and scope of her employment or about any other fact. Nor is this ruling a decision about the appropriate scope of discovery. The court acknowledges that the government has argued some of Ms. Mayhew's proposed discovery is overbroad or impermissible (*see* doc. 19 at 9–15, 16–17), but any ruling on the scope of Ms. Mayhew's proposed discovery is unripe because she has not yet made any discovery requests to which the government can object, nor have the parties had an

opportunity to agree on entry of a protective order that might allay some of the government's concerns. This ruling merely finds that dismissal of the government based on a lack of subject matter jurisdiction is not appropriate at this point.

## IV. CONCLUSION

The court **FINDS AS MOOT** the government's Rule 56(a) motion for summary judgment. The court **GRANTS** Ms. Mayhew's Rule 56(d) motion. The court **GRANTS IN PART AND DENIES IN PART** the government's Rule 12(b)(1) motion to dismiss this case for lack of subject matter jurisdiction. The court **GRANTS** the motion and **WILL DISMISS** the Federal Bureau of Prisons, the United States Department of Justice, and the National Institute of Corrections **WITHOUT PREJUDICE** for lack of jurisdiction. The court **DENIES** the motion with respect to the United States, but **WITHOUT PREJUDICE** to renewal after appropriate discovery has been completed.

The court **LIFTS** the stay imposed on Rule 16 and 26 obligations. The court will enter a separate order with instructions for the remaining parties about conferring and filing a Rule 26 report.

**DONE** and **ORDERED** this April 24, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE