### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ANTHONY LEZURRO MILLER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 7:23-cv-1201-ACA |
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

### MEMORANDUM OPINION

On a rainy day in February 2022, Ernestine Butler drove to work at the Federal Correction Institute at Aliceville, Alabama ("Aliceville") in a van subsidized by the federal government through its TRANServe program. At around 10:20 a.m., Ms. Butler's van collided with a Mazda5 driven by Anthony Lezurro Miller. Mr. Miller died at the scene.

Mr. Miller's daughter and personal representative of his estate, Latasha Mayhew, filed this lawsuit. Ms. Butler and the United States of America are the only remaining defendants, and the government moves for summary judgment on Count One (negligence), Count Two (wantonness), Count Three (wrongful death), and Count Four (negligent entrustment) under the Federal Tort Claims Act ("FTCA"). (Doc. 70). It argues that the court lacks jurisdiction under the FTCA because

Ms. Butler was not acting within the scope of her employment when she was commuting to work. (*Id.* at 32–53). It also maintains that the estate has not created a material dispute of fact as to the government's liability under the FTCA because it has provided no evidence that Ms. Butler caused the accident. (*Id.* at 18–32). Finally, it contends that even if the estate can recover damages, those damages are limited to the cost of funeral expenses. (*Id.* at 53–58).

As the court has previously explained, the correct mechanism to challenge the court's jurisdiction under the FTCA is Federal Rule of Civil Procedure 12(b)(1). (Doc. 30 at 3–5). And because "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional," the government's arguments regarding the merits of the estate's claims also must be brought under Rule 12(b)(1). *Brownback v. King*, 592 U.S. 209, 217 (2021). So the court construes these portions of the government's motion for summary judgment as a motion to dismiss for lack of jurisdiction.

The court **WILL DENY** the government's motion to dismiss for lack of jurisdiction because a factfinder could find that Ms. Butler was acting within the scope of her employment when the accident occurred. The court also **WILL DENY** the motion to dismiss Counts One, Two, and Three because the estate has created genuine disputes of material fact on these claims. However, the estate abandons

2

Count Four (doc. 89 at 23), so the court **WILL GRANT** the motion to dismiss Count Four without further discussion.

The government's arguments regarding appropriate damages in this case are properly considered in a motion for summary judgment. *See* Fed. R. Civ. P. 56(a). The court **WILL GRANT** the government's motion and **WILL ENTER SUMMARY JUDGMENT** in favor of the government on the estate's entitlement to compensatory damages for the cost of the car Mr. Miller was driving and for household services. But the court **WILL DENY** the motion as to the value of Mr. Miller's Social Security benefits.

## I.    BACKGROUND

The parties contest many of the facts. (*See, e.g.*, doc. 89 at 8–9). When ruling on a motion for summary judgment or a factual jurisdictional challenge to an FTCA claim under Rule 12(b)(1), the court "must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [it] must credit the nonmoving party's version." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (quotation marks omitted; alteration accepted); *see Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990) ("When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual

attack on subject matter jurisdiction."). The court's description of the facts therefore adopts the version most favorable to the estate, even though those facts "are not necessarily the true, historical facts; they may not be what a [factfinder] at trial would, or will, determine to be the facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020).

Alabama Highway 17 ("AL-17") is a two-lane highway with one lane running in each direction and a speed limit of 55 miles per hour. (Doc. 68-1 at 9, 27–28; doc. 68-48; doc. 70 at 8 ¶ 46; doc. 89 at 9). On February 21, 2022, Mr. Miller was driving a black Mazda5 minivan southbound while Ms. Butler was driving a white Dodge Caravan northbound. (Doc. 68-1 at 28–29; doc. 68-2 at 22; doc. 68-13 at 11; doc. 70 at 4 ¶ 8; doc. 89 at 8). Neither owned the cars they were driving: Mr. Miller was not listed on any documents relating to the Mazda5 and Ms. Butler was driving a rental used for carpool purposes by Aliceville employees. (Doc. 68-33; doc. 68-2 at 6–7).

Combyuatta Bryant was also driving northbound on AL-17. (Doc. 68-3 at 6). About ten seconds before the accident, a van passed her driving 75 miles per hour. (Doc. 15-1; doc. 68-3 at 8, 11, 19, 22). At the time, it was raining and she and the van were ascending a small hill that obscured the view of oncoming traffic. (Doc. 68-3 at 8, 10–11). Ms. Bryant testified that the van did not return to the correct lane after passing her. (*Id.* at 11). And, although Ms. Bryant did not see the

accident itself—she had turned to look at her nephew in the passenger seat—when she looked back at the road, she saw a ball of white smoke ahead and then came upon the accident. (*Id.* at 4, 19). According to Ms. Bryant, the accident occurred in the southbound lane. (*Id.* at 10).

Mr. Miller and Ms. Butler collided around 10:20 a.m. (Doc. 68-30). The parties agree that Mr. Miller and Ms. Butler were both traveling 65 miles per hour on impact. (Docs. 68-26; doc. 70 at 9 ¶ 51; doc. 89 at 9). The parties also agree that the collision occurred in Ms. Butler's lane (doc. 70 at 7 ¶ 38; doc. 89 at 8–9), but contest whether Mr. Miller veered into Ms. Butler's lane to avoid Ms. Butler's car. (doc. 70 at 7–8 ¶¶ 35–35, 39–41; doc. 89 at 8–9). Ms. Butler was taken to the emergency room and does not remember the accident. (Doc. 68-2 at 5, 11). Mr. Miller died at the scene of the accident. (Doc. 68-35). He was 61 years old and had end-stage renal disease. (Doc. 68-12 at 1, doc. 68-5 at 10, 15). Mr. Miller had no dependents and his sole income was Social Security disability insurance payments. (Doc. 68-13 at 4–5).

Because this case involves a question about whether Ms. Butler was acting in the scope of her employment at the time of the accident, the court now turns to the facts relevant to that issue. The Bureau of Prisons ("BOP") employed Ms. Butler as a recreation specialist at Aliceville. (Doc. 68-15 at 3). Ms. Butler was commuting from her home to work using the TRANServe program. (*Id.* at 1).

The TRANServe program covers costs for federal employees to commute to work via mass transit. (Doc. 68-7 at 9). BOP paid the cost of Ms. Butler's commute via the TRANServe program. (Doc. 70 at 13 ¶¶ 85–86; doc. 89 at 9; *id.* at 6–7 ¶ 27; doc. 95 at 5). She received $270 per month to participate in this program. (Doc. 68-37). The parties dispute the details about how the TRANServe program works in practice at Aliceville, but for purposes of this opinion, the court must accept that BOP paid to rent the van and that Ms. Butler paid for maintenance and gas for the van using a preloaded card provided by the TRANServe program. (Doc. 68-2 at 5, 7–8, 30; *but see* doc. 68-7 at 8, 10–11).

## II.   DISCUSSION

Where the jurisdictional basis of the claims is intertwined with the merits, as is the case here, the court applies the summary judgment standard when ruling on a motion to dismiss for lack of subject matter jurisdiction. *Lawrence*, 919 F.2d at 1530. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, "[t]he nonmoving party must offer more than a mere scintilla of evidence for [his] position; indeed, the nonmoving party must make a showing sufficient to permit the [factfinder] to reasonably find on [his] behalf." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1199 (11th Cir. 2024).

The government moves to dismiss this case for lack of jurisdiction for two reasons: Ms. Butler was not acting within the scope of her employment at the time of the crash (doc. 70 at 32–53); and (2) Mr. Miller, not Ms. Butler, caused or contributed to the accident (*id.* at 20–27, 29–32). In the alternative, the government maintains that, even if the estate survives dismissal, its damages are limited to funeral expenses. (*Id.* at 53–58). The court begins with the scope of employment.

1.    Scope of Employment

Sovereign immunity protects the United States and its agencies against suit. *Smith v. United States*, 14 F.4th 1228, 1230–31 (11th Cir. 2021). Because sovereign immunity "is jurisdictional in nature," the court lacks jurisdiction over such suits unless the government has explicitly waived immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Smith*, 14 F.4th at 1231. The United States has waived its immunity from claims for money damages for "death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). So the court has subject matter jurisdiction over this case only if Ms. Butler was acting within the scope of her employment and if she could be liable to the estate. *See id.*; *Brownback*, 592 U.S. at 217 (2021) ("[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional.").

"The question of whether an employee's conduct was within the scope of [her] employment is governed by the law of the state where the incident occurred." *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996) (quotation marks omitted). In Alabama, "[a]n act is within an employee's scope of employment if the act is done as part of the duties the employee was hired to perform or if the act confers a benefit on [her] employer." *Hulbert v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 22, 23 (Ala. 1998). Under Alabama's "going and coming rule," an employee is not acting within the scope of her employment when she is traveling to or from work. *Smith v. Brown-Serv. Ins. Co.*, 35 So. 2d 490, 493 (Ala. 1948). Relying on this rule, the government argues that Ms. Butler was not acting within the scope of her employment because she was driving to work when the accident occurred. (Doc. 70 at 35–38).

The estate does not dispute that Ms. Butler was commuting to work when the accident occurred, but it argues that Ms. Butler was still acting within the scope of her employment because (1) the government provided transportation expenses as part of the consideration paid for Ms. Butler's services; (2) the government retained control over the van provided for Ms. Butler's commute; and (3) to the extent the government might argue that Ms. Butler misused the transit benefit, it ratified her misuse by failing to stop it. (Doc. 89 at 24–42). The court does not find the last two

arguments persuasive but will not address them because the first argument prevails at this stage.

Under Alabama law, when an employer "bears a part of the expense of an automobile" used for an employee's commute and "such transportation arrangement is beneficial to both" the employer and employee, the employee's commute falls within the scope of employment. *Atlanta Life Ins. Co. v. Stanley*, 165 So. 2d 731, 735 (Ala. 1964). In *Stanley*, the Alabama Supreme Court held that an employer was vicariously liable for its employee's negligence because the employee, an insurance salesman who worked out of his own home and received a weekly stipend for his car's operation, was traveling home after collecting premiums and "it was beneficial to his [employer] that [the employee] returned the premium collections to his home and headquarters." *Id.* Most recently, the Alabama Supreme Court held that an employee was acting in the scope of his employment when he negligently caused an accident during his commute home because the employer had paid for the employee's gas. *Cheshire v. Putman*, 54 So. 3d 336, 340–41 (Ala. 2010). Notably, the Alabama Supreme Court in *Cheshire* did not require the employee to show a benefit to both the employee and employer before finding that the gas payment brought the employer's commute within the scope of his employment. *See id.*

Here, Ms. Butler presented evidence that BOP rented the van that she was driving and paid her $270 per month for participating in the TRANServe program,

9

which she used to pay for gas and maintenance. (Doc. 68-2 at 5, 7–8, 30; doc. 68-7 at 11; *see* doc. 68-37). The government has presented conflicting evidence. (*See* doc. 68-7 at 8–11). But that evidence simply creates a factual dispute that must be resolved at trial. *See* Fed. R. Civ. P. 56(a); *Calderon*, 114 F.4th at 1199.

Ms. Butler also presented evidence that the "transportation arrangement is beneficial to both" her and the BOP because she did not have to use her personal car to commute (doc. 68-7 at 6–7, 14; doc. 68-2 at 6), and the government benefits from its employees having reliable transportation to work and reduced pollution and traffic (doc. 68-7 at 6, 12–13; doc. 68-11 at 9; 68-2 at 7, 16); *see Stanley*, 165 So. 2d at 735. The government argues that these benefits are too attenuated from Ms. Butler's employment to confer a benefit on the government, but it offers no authority to support its conclusory statement. (Doc. 70 at 46). Given the Alabama Supreme Court's application of this exception even in the absence of evidence of a benefit to the employer, *see Cheshire*, 54 So. 3d at 340–41, the court declines to find this benefit too attenuated under Alabama law.

The government also argues that application of this exception here would subject the federal government to liability whenever an employee participates in the TRANServe program. (Doc. 70 at 46–47). Even if the court were inclined to consider public policy arguments in the face of a statute waiving sovereign immunity and an Eleventh Circuit decision squarely holding that this court is constrained by state law,

10

the government's argument paints too broad a picture of the import of this ruling. This case involves only Alabama's interpretation of the scope of employment. *See Flohr*, 84 F.3d at 390. Other States' scope of liability may differ.

Under *Stanley* and *Cheshire*, a factfinder could conclude that Ms. Butler was acting within the scope of her employment during her commute because BOP paid for part of the expense of the van and the arrangement benefited both the government and Ms. Butler. *Cheshire,* 54 So. 3d at 340–41; *Stanley*, 165 So. 2d at 735. Accordingly, the court **WILL DENY** the motion to dismiss based on the scope of Ms. Butler's employment.

### 2.    Merits Arguments

The estate brings claims of negligence, wantonness, and wrongful death. (Doc. 1 at 6–16; *see also* doc. 89 at 23). The government argues that the estate cannot establish that Ms. Butler proximately caused Mr. Miller's death, that Ms. Butler acted wantonly, or that Mr. Miller was contributorily negligent. (Doc. 70 at 20–27, 29–32). The court takes each argument in turn.

#### a.    Proximate Cause

An essential element of negligence, wantonness, and wrongful death claims is that the defendant proximately caused the injury. *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994); *Hughes v. Marley*, 390 So. 3d 545, 549 (Ala. 2023). "Proximate cause is an act or omission that in a natural and continuous sequence,

11

unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Martin*, 643 So. 2d at 567.

The government argues that the estate has not provided evidence that Ms. Butler proximately caused Mr. Miller's death because it has identified neither an eyewitness to the crash nor an expert who could opine during the case in chief about how the collision occurred, whereas the government has experts who have opined that Mr. Miller caused the crash. (Doc. 70 at 20–23). The court disagrees.

The estate does not need direct evidence to prove proximate causation. *Bell v. Colony Apartments Co.*, 568 So. 2d 805, 810 (Ala. 1990) ("[P]roof of negligence may be established completely through circumstantial evidence."). Ms. Bryant's testimony is circumstantial evidence that can be considered when determining if Ms. Butler caused the accident. Accepting Mr. Bryant's deposition testimony as true, she saw Ms. Butler driving above the speed limit, in the rain, on the wrong side of the highway on a blind hill seconds before the accident. (Doc. 68-3 at 6, 8, 10–11, 19, 22). This is circumstantial evidence that Ms. Butler proximately caused Mr. Miller's death. The fact that Ms. Bryant did not actually witness the accident can be considered when determining what weight to give her testimony.

The government's position rests entirely on rejecting Ms. Bryant's testimony about what she witnessed shortly before the accident.[1] (*Id.* at 22–23). Ms. Bryant's credibility is a question for trial. *See Reese*, 527 F.3d at 1271; *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1217 (11th Cir. 2024) ("The court will not make credibility determinations or weigh the parties' evidence."). At this stage of the proceedings, the court must accept Ms. Bryant's testimony as true and draw all reasonable inferences in the estate's favor. *Stalley*, 124 F.4th at 1283.

      b.    *Wantonness*

Wanton conduct is that "which is carried on with a reckless or conscious disregard of the rights or safety of others." *Hicks v. Dunn*, 819 So. 2d 22, 24 (Ala. 2001). The tortfeasor must have been conscious that the act would likely result in injury, but actual intent to injure another is not required. *Burns v. Moore*, 494 So. 2d 4, 5–6 (Ala. 1986). "The test for whether the conduct rises above simple negligence to the level of wantonness is a fact question to be submitted to the [factfinder], unless

---

[1] Ms. Bryant's testimony has changed in some ways over time. For example, in 2023, she attested that she "noticed there was a terrible accident involving [an Aliceville] prison van that had just passed [her]" around 10:00 a.m. (Doc. 15-1). In 2025, she testified that the accident occurred around 4:00 p.m. and denied ever saying it was an "Aliceville prison van." (Doc. 68-3 at 14, 20). The government points to this and other inconsistencies to argue that the court can disregard her testimony. (Doc. 70 at 22–23). But it offers no authority for the proposition that the court can disregard a disinterested witness's testimony because of internal inconsistencies. (*See id.*); *see Lane v. Celotex Corp.*, 782 F.2d 1526, 1530–31 (11th Cir. 1986). The inconsistencies between Ms. Bryant's affidavit and deposition testimony do not make her testimony inadmissible; they merely offer a basis for the government to impeach her credibility. *See Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cit. 2008) ("it was not for the district court to discount or disregard [affidavits] at the summary judgment stage based on its assessment of the *quality* of the evidence. . . . Such credibility determinations are for the [factfinder].").

there is a total lack of any evidence from which the [factfinder] could reasonably infer the higher degree of culpability." *Id.* at 5.

The government argues that the estate has not presented evidence of Ms. Butler's consciousness that her actions were likely to cause injury. (Doc. 70 at 24–26). It maintains that the only evidence of wantonness is Ms. Butler's speed, but Ms. Butler could not have been conscious of any potential injury from her speed because she did not know she was speeding and, in any event, speeding alone does not constitute wantonness. (*Id.*). But "speed, coupled with other circumstances, may amount to wantonness." *Serio v. Merrell, Inc.*, 941 So. 2d 960, 966 (Ala. 2006). Construing the facts in the light most favorable to the estate, seconds before the accident, Ms. Butler was driving twenty miles per hour over the speed limit in the rain, passed Ms. Bryant on a two-lane highway before a hill that obscured oncoming traffic, and did not return to the correct lane. (Doc. 68-3 at 4, 6, 8, 10–11, 19, 22; doc. 15-1). A reasonable factfinder could determine that these facts rise to the level of wantonness. *See Hicks*, 819 So. 2d at 23, 25 (holding that a jury question on wantonness existed when a defendant was driving fifteen to twenty-five miles per hour over the speed limit and did not slow down when he crested a blind hill despite knowing that drivers on the other side of the hill might be turning into a busy restaurant); *see also Sellers v. Sexton*, 576 So. 2d 172, 175 (Ala. 1991) (holding that wantonness was a jury question where the driver was going the speed limit but knew

14

that rocks were scattered on the road and a wide curve blocked her view of oncoming traffic).

### c.    *Contributory Negligence*

"Contributory negligence is an affirmative and complete defense to a claim based on negligence." *Serio*, 941 So. 2d at 964. To establish the defense, the defendant must prove "that the plaintiff 1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger." *Id.* Contributory negligence is a question for trial unless "the facts are such that all reasonable people would logically have to reach the conclusion that the plaintiff was contributorily negligent." *Id.*

The government maintains that Mr. Miller was contributorily negligent, and therefore foreclosed from recovery, for two reasons: (1) he was speeding and veered into the opposite lane and, (2) his license had been revoked, he did not have insurance, and the car was not registered to him. (Doc. 70 at 30–31).

A material issue of fact exists as to whether Mr. Miller acted negligently by veering into Ms. Butler's lane given the circumstances. Taking the facts in the light most favorable to the estate, a reasonable factfinder could conclude that shortly before the collision, Ms. Butler was speeding in Mr. Miller's lane, causing Mr. Miller to leave his lane in an attempt to avoid her. (Doc. 68-3 at 7, 11). As for

15

Mr. Miller's speeding, the government has neither presented evidence nor argued that his speed contributed to the accident. *See Allman v. Beam,* 130 So. 2d 194, 196–97 (1961) (holding that negligence *per se* "will not in itself prevent recovery on the ground of contributory negligence if the violation . . . is not a contributing cause of the injury"). Likewise, the government does not explain how Mr. Miller's lack of license, registration, and insurance contributed to the accident. *See Terry v. Nelms*, 54 So. 2d 282, 284 (1951) ("Negligence must be a concurring proximate cause of the injury and not merely a remote or antecedent occasion or condition of the injury to be available under a plea of contributory negligence.").

Genuine disputes of material fact bar dismissal of the estate's claims. *See Lawrence*, 919 F.2d at 1530. The court therefore **WILL DENY** the government's motion to dismiss Count One, Two, and Three.

### 3.    Damages

The FTCA provides that "the United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for . . . punitive damages." 28 U.S.C. § 2674. Alabama limits recovery in wrongful death actions to punitive damages. *Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007). Where a State does that, "the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was

16

brought." 28 U.S.C. § 2674. Federal law provides the definition for the term "pecuniary injuries." *Hoyt v. United States*, 286 F.2d 356, 359 (5th Cir. 1961).[2] And under federal law, "pecuniary injuries" means "[t]he damages . . . equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased." *Id.* This calculation includes lost income and services the estate might reasonably have expected from the deceased during his lifetime. *Id.* at 559–60.

The estate, estimating that Mr. Miller would have otherwise survived to the age of 82, seeks damages compensating for the loss of Mr. Miller's Social Security payments, the value of his household services, and the value of the Mazda5. (Doc. 1 at 17; doc. 68-6 at 9; doc. 68-42; 88-8 at 3). The government argues that the estate can recover only funeral expenses. (Doc. 70 at 53–58).

### a.    Social Security Benefits

The government maintains that the estate is not entitled to Mr. Miller's Social Security benefits because (1) benefits cut off upon the death of a beneficiary and he had no family that would be entitled to survivor benefits, and (2) it is speculative to assume that Mr. Miller would have survived to the age of 82 given his end-stage renal disease. (Doc. 70 at 54–55).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

The government's first argument fails because neither the estate nor Mr. Miller's survivors are seeking to receive Mr. Miller's Social Security; it is seeking to recover the value of the income he would have received if he had survived the accident, a form of compensatory damages permitted by the FTCA. *See Hoyt*, 286 F.2d at 359 (explaining that damages under the FTCA include "pecuniary benefits that would have resulted from the continued life of the deceased").

The government also argues that even if the estate is entitled to recover for Mr. Miller's lost Social Security income, those damages should be reduced by his average monthly expenditures. (Doc. 70 at 55). But it offers no authority in support of that position. (*See id.*; *see also* doc. 95 at 23–27). It has therefore abandoned this argument. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) ("Abandonment of an issue can . . . occur when passing references appear in the argument section of an opening brief, particularly when the references are mere 'background' to the [party]'s main arguments or when they are 'buried' within those arguments.").

The government's second argument, that damages through the age of 82 are speculative because Mr. Miller might not have survived to that age (doc. 70 at 54–55), fails because "where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby

relieve the wrongdoer from making any amend for his acts." *Hoyt*, 286 F.2d at 360. Whether the estate can establish its entitlement to the equivalent of Mr. Miller's Social Security payments through the age of 82 is a question for trial.

### b. Household Services

As explained above, the estate can recover for "pecuniary injuries," including household services, for the individual "whose benefit the action was brought." 28 U.S.C. § 2674; *Hoyt*, 286 F.2d at 359–60. Under Alabama law, wrongful death actions are brought by the personal representative of the estate—here, Ms. Mayhew—on behalf of the statutory beneficiaries. (Doc. 1 ¶ 8); *Kirksey v. Johnson*, 166 So. 3d 633, 645 (Ala. 2014); *see Steele v. Steele*, 623 So. 2d 1140, 1141 (Ala. 1993) ("[D]amages awarded [for wrongful death] are distributed according to the statute of distribution and are not part of the decedent's estate.").

The government maintains that the estate may not recover for household services because Mr. Miller only provided chores for his own maintenance and not for any individual for whose benefit the action was brought. (Doc. 70 at 55–57). The estate counters that Mr. Miller provided lawn and garden care for Ms. Mayhew, including growing food. (Doc. 89 at 45, 48; *see* doc. 68-5 at 17–18). But Ms. Mayhew was not part of Mr. Miller's household. (Doc. 68-5 at 20). Thus, the services Mr. Miller provided her were not household services. Accordingly, estate is

19

not entitled to recover for those damages and the court **WILL GRANT** summary judgment to the government on this issue.

### c.    *Property Loss of the Mazda5*

The government maintains that the estate cannot recover the cost of Mr. Miller's destroyed Mazda5 because he did not own the car, did not hold its title, and was not listed on its registration. (Doc. 70 at 58; *see* doc. 68-33). The estate responds that the government's economist included the value of the car in her estimate of economic damages. (Doc. 89 at 43; *see* doc. 88-8 at 1, 4). But this expert report does not opine on whether the estate is legally entitled to that damage calculation. And nothing in the economist's calculation rebuts the government's evidence that this was not Mr. Miller's car.

The estate has not created a triable issue of material fact as to whether it is entitled to compensatory damages for the lost value of the Mazda5. Accordingly, the court **WILL GRANT** summary judgment to the government on this issue.

## III.   CONCLUSION

The court **WILL DENY** the government's motion to dismiss under Rule 12(b)(1) on the negligence, wantonness, and wrongful death claims but **WILL GRANT** the motion on the negligent entrustment claim. The court **WILL GRANT** the government's motion for summary judgment on damages for the Mazda5 and household services and **WILL ENTER JUDGMENT** in its favor on that part of

the claim. The court **WILL DENY** the motion as to Social Security benefits.

The court will enter a separate partial judgment consistent with this opinion.

**DONE** and **ORDERED** this March 31, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

21